## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **ELSHEIKH ABDELRAHIM; RANA** | : | |
| **ABUSHAMMA; KHALED** | : | |
| **AL-ZUBAIDI; ENIOLA AJAO;** | : | |
| **MARIE-ANGE DELIMON;** | : | |
| **SHAKRE A. ELMANE; SEYED** | : | |
| **ABDULAZIZ ESMAEILI;** | : | |
| **MESHKAT FARROKHI;** | : | **CIVIL No.  1:26-cv-11995** |
| **MOHAMMAD-REZA GHOVANLOO;** | : | |
| **HABIB ALRAHMAN ALNEDARI;** | : | |
| **OSARODION IGBINOMWANHIA;** | : | |
| **TANIA JAHANPANAH:  AVID** | : | |
| **KHOUBROYEPAK; SERGIO POLI** | : | |
| **DE FRIAS; ISSA POUR-GHAZ;** | : | **COMPLAINT FOR** |
| **THI THI LWIN; and SAEEDEH** | : | **DECLARATORY AND** |
| **MIRBAGHERI,** | : | **INJUNCTIVE RELIEF** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| **JOSEPH B. EDLOW, Director, U.S.** | : | |
| **Citizenship and Immigration** | : | |
| **Services;** | : | |
| **MARKWAYNE MULLIN,** | : | |
| **Secretary, Department of** | : | |
| **Homeland Security,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## INTRODUCTION

1.  Plaintiffs are seventeen highly-skilled professionals all of whom were lawfully admitted to the United States to work or study and now face immense personal and professional disruptions as a result of several U.S. Citizenship and Immigration Services' (USCIS) policies subjecting Plaintiffs to presumptive denials and

adjudicatory holds on their immigration benefits applications. Plaintiffs challenge these policies, their application to their pending petitions, as well as the adjudicatory delays themselves.

2. These policies are an unlawful abdication of the statutory role assigned to USCIS by Congress to adjudicate immigration applications made by individuals residing inside of the United States. 6 U.S.C. § 271(b). They were improperly promulgated—poorly reasoned and crafted without due consideration of the enormous, predictable impact the policies would have on a wide array of stakeholders. They violate numerous guarantees and protections found in the Fifth Amendment of the Constitution, the Immigration and Nationality Act (INA), and federal regulations.

3. At bottom, these policies suspend adjudication for Plaintiffs and prejudice any adjudications that USCIS allows to proceed. The Court should set aside the policies and direct Defendants to adjudicate Plaintiffs' pending petitions.

## LEGAL BACKGROUND

**A. The President issues proclamations impacting the ability of nationals from 39 countries and Palestine to travel to the United States.**

4. On June 4, 2025, the President issued a proclamation under 8 U.S.C. § 1182(f) restricting the entry of foreign nationals from 19 countries. *See* Pres. Procl. No. 10949, 90 Fed. Reg. 24497. On December 16, 2025, the President issued a second proclamation expanding the list of countries subject to the entry ban to 39 countries. Pres. Procl. No. 10998, 90 Fed. Reg. 59717 (collectively with Pres. Procl. No. 10949, the "Travel Ban"). The 39 countries (plus the Palestinian Authority) subject to the Travel Ban are Afghanistan, Angola, Antigua and Barbuda, Benin, Burkina Faso,

2

Burma, Burundi, Chad, Republic of the Congo, Cote d'Ivoire, Cuba, Dominica, Equatorial Guinea, Eritrea, Haiti, Gabon, The Gambia, Iran, Laos, Libya, Malawi, Mali, Mauritania, Niger, Nigeria, Sierra Leone, Senegal, Somalia, South Sudan, Sudan, Syria, Tanzania, Togo, Tonga, Turkmenistan, Venezuela, Yemen, Zambia, and Zimbabwe.

5. The Travel Ban addresses entry into the United States and does not discuss immigration benefits afforded to noncitizens who are already present here. Nor does it set forth any legal or policy rationale for denying immigration benefits to noncitizens lawfully in the country. Instead, the Travel Ban purports to protect U.S. citizens "from aliens who intend to commit terrorist attacks, threaten our national security, espouse hateful ideology, or otherwise exploit the immigration laws for malevolent purposes." 90 Fed. Reg. at 24497. President Trump put it more pointedly, describing the goal of the Travel Ban as "keep[ing] the radical Islamic terrorists out of our country." *Fact Sheet: President Donald J. Trump Restricts the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, The White House (June 4, 2025).[1]

6. The government's asserted justification for the Travel Ban varies by country and includes some limited exceptions. Some countries were listed based on purported vetting or screening deficiencies; others were listed based on different considerations, including reasons related to immigration enforcement. Burma, for example, was

---

[1] https://www.whitehouse.gov/fact-sheets/2025/06/fact-sheet-president-donald-j-trump-restricts-the-entry-of-foreign-nationals-to-protect-the-united-states-from-foreign-terrorists-and-other-national-security-and-public-safety-threats/

included based on concerns about high overstay rates and low repatriation numbers. The Travel Ban also includes an exception for dual nationals who hold a passport with a country not subject to the Travel Ban. As explained below, USCIS later used that same list to restrict domestic benefit requests filed by noncitizens already present in the United States, without distinguishing among the various asserted reasons underlying the entry restrictions

**B. USCIS extended § 1182(f) entry bans into a categorical hold on domestic benefits adjudications.**

7. Despite the Travel Ban's narrow focus, within months, USCIS issued guidance aimed at translating these entry restrictions into a sweeping hold on *domestic* benefits adjudication. On November 27, 2025, USCIS issued a policy alert announcing revisions to the USCIS Policy Manual and directing adjudicators to treat country of origin as a "significant negative factor" in discretionary adjudications where the applicant comes from a Travel Ban country (or other disfavored countries). *See* USCIS, PA-2025-26, Policy Alert: Impact of INA 212(f) on USCIS' Adjudication of Discretionary Benefits (Nov. 27, 2025) (attached as Ex. A).

8. Five days later, on December 2, 2025, USCIS issued another memorandum, this time directing USCIS personnel to "[p]lace a hold on pending benefits requests for aliens from countries listed in" the Travel Ban "pending a comprehensive review, regardless of entry date." *See* USCIS, PM-602-0192, Policy Memorandum: Hold and Review of All Pending Asylum Applications and All USCIS Benefit Applications Filed by Aliens from High-Risk Countries (Dec. 2, 2025) (attached as Ex. B) at 1.

9. On January 1, 2026, USCIS issued a third memorandum, extending the benefits hold to cover all 39 countries subject to the Travel Ban and confirming that the hold bars "issuance of a final decision" on "all pending benefit applications" with limited exceptions. *See* Policy Memorandum PM-602-0194, Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries (Jan. 1, 2026) (attached as Ex. C) (collectively with the earlier memoranda, the "Benefits Hold") at 1, 1 n.2. By its terms, the Benefits Hold applies without regard to how long an applicant has already been in the United States or what prior screening the applicant has already undergone. Ex. C at 1, 3 n.8.

10. The Travel Ban is confined to entry, yet USCIS's Benefits Hold invokes those border restrictions to prohibit final decisions on covered domestic benefit requests. Agency regulations define "benefit request" as "any application, petition, motion, appeal, or other request relating to an immigration or naturalization benefit." 8 C.F.R. § 1.2. The Benefits Hold therefore sweeps broadly across USCIS's adjudicatory system, covering even applications designed to allow recent graduates to transition from study to field-related work experience in the United States. *See id.*; Ex. C. Notably, that prohibition applies to individuals already in the United States and is not tethered to any individualized concern, or even the country-specific reasons for the Travel Ban. It is a categorical rule of non-decision justified by reference to an entry framework.

11. The Benefits Hold and Negative Factors policies, furthermore, are indefinite on its face. They set out screening criteria for review of covered cases, but do not

identify any endpoint for completion of that process or any timeline for resumption of adjudications. *See generally* Ex. C. It adds only that "[w]ithin 90 days" USCIS "will prioritize a list for review, interview, and re-interview, and issue operational guidance." *Id.* at 5. But that statement does not describe what "operational guidance" will entail, what decision rule it will supply, or when USCIS might return to issuing final decisions for the many categories of pending applications subject to the broad hold. *Id.* And the "extraordinary circumstances" carveout—for individual requests to lift the hold, which no one other than the USCIS Director or Deputy Director may approve—offers no explanation as to what would qualify as "extraordinary" or how that exception operates in practice. *Id.* at 3.

12. USCIS acknowledges that the policies "may result in delay," yet does not explain how suddenly freezing domestic adjudications is "necessary and appropriate." *Id.* at 4. It merely states that it has "weighed" that burden on applicants against a generic interest in preserving national security. *Id.*

13. USCIS made no attempt to connect its blanket prohibitions to a concrete evidentiary showing or a defined problem that individualized adjudication could not address. It emphasizes the "operational necessity" to guard against potential "threat[s] to national security or public safety" and the "urgent need" to vet and screen noncitizens "to the maximum degree possible." As support for that "urgent need," USCIS cited two examples of crimes allegedly committed by people from Afghanistan, but cited no evidence that there was a lack of screening or vetting in either individual's case. Ex. B at 2.

14. USCIS regulations already address the limited circumstances in which adjudication may be withheld during an investigation. Under 8 C.F.R. § 103.2(b)(18), USCIS may withhold adjudication of an individual benefit request when an investigation is underway and disclosure of information would prejudice that investigation. The Benefits Hold does not follow that regulation. It imposes a categorical hold based on nationality, not a case-specific withholding determination based on an individualized investigation.

15. The policies, in short, pair an across-the-board bar on final decisions with an open-ended review process, without identifying what showing would warrant an exception so that a case can finally be adjudicated. And while Defendants justify the action by reference to § 1182(f) entry restrictions, they have not identified any statutory authority for ceasing adjudications of domestic benefit requests for noncitizens who have been screened and vetted by the agencies and are lawfully present in the United States.

**C. Despite the limited concerns supporting the Negative Factors and Benefits Hold policies, USCIS is applying it to applications and petitions filed by highly-skilled professionals pursuing critical careers in the United States.**

16. The policies interrupt the ordinary immigration process designed by Congress for highly-skilled professionals who plan to study in the United States, earn U.S. licenses in their fields, and build a career within that field.

17. This process typically requires individuals, like Plaintiffs, to work their way through a succession of non-immigrant visas before being in a position to seek lawful permanent residency and, eventually, citizenship.

18. A common pathway involves the individual beginning as a student in F-1 nonimmigrant status, where they are generally unable to work except for a period of time following graduation as part of the Optional Practical Training program.

19. Optional Practical Training (OPT) is a domestic employment authorization sought by students on F-1 visas who have already been admitted, have maintained status through a degree program, and now require an Employment Authorization Document (EAD) from USCIS to begin authorized training.

20. OPT authorizes practical training in employment "directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii). OPT is undertaken after completion of the course of study. 8 C.F.R. § 214.2(f)(10)(ii)(A)(3); USCIS Policy Manual, Vol. 2, Pt. F, Ch. 5.

21. Post-completion OPT is governed by a fixed timetable tied to program completion. As a general rule, an F-1 student may receive no more than 12 months of post-completion OPT, and must complete that practical training within 14 months of completing study, subject to limited exceptions not applicable here. 8 C.F.R. § 214.2(f)(1)(ii)(A)(3). The relevant clock thus begins to run upon completion of study, not when USCIS eventually adjudicates the OPT application. And, as a result, delay in adjudicating the application eats into the allotted period during which the student may obtain and use post-completion OPT.

22. From there, they might move to an H-1B nonimmigrant visa. The H-1B visa allows U.S. employers to temporarily hire foreign workers into specialty occupation positions (i.e., those requiring specialized knowledge and a college degree). The H-1B

visa is a nonimmigrant visa. H-1B status is valid for up to three years and renewable for another three years.

23. To secure an extension of an H-1B visa, the applicant's employer must file a Form I-129 on their behalf. The petition can be filed no earlier than six months before the expiration of your current authorization. Filing an extension request on time automatically preserves the H-1B visa holder's legal status. It allows the beneficiary to continue working for up to 240 days past the original H-1B visa's expiration date.

24. Because the extension is not self-executing, if USCIS withholds adjudication of the extension application, it means that an applicant will have to stop working. By the time approval issues, the time remaining on the visa will be reduced.

25. From there, they can apply for one of the employment-based immigrant visas (an EB-1 or EB-2, as relevant here). Even if they are granted an employment-based visa, they have to wait in their nonimmigrant classification until one of the annually restricted number of visas becomes available to them. At that point, they can file an Application to Adjust Status (Form I-485) to lawful permanent resident.

26. Any delay in moving between statuses could derail career opportunities and prevent the Plaintiff from completing a program or obtaining certification. It could also result in the Plaintiff having to leave the United States and return to their country of citizenship, which may not be possible under certain circumstances or country conditions.

27. The policies, therefore, place Plaintiffs in an impossible situation where they are unable to complete their U.S.-based training, licensing, and certifications, or are prevented from working in their trained fields.

28. Meanwhile, the Benefits Hold also prevents individuals from securing Temporary Protected Status (TPS) even if it is unsafe for them to return to their country of citizenship. Congress created TPS in the Immigration Act of 1990. It is a temporary immigration status provided to nationals of specifically designated countries that are confronting an ongoing armed conflict, environmental disaster, or extraordinary and temporary conditions. It provides a work permit and protection from deportation to foreign nationals from those countries who are in the United States at the time the U.S. government makes the designation.

29. TPS applicants must submit Form I-821, Application for Temporary Protected Status. When filing a TPS application, applicants can also request an Employment Authorization Document by submitting a completed Form I-765, Application for Employment Authorization, with their Form I-821.

**D. USCIS is accepting "premium processing" fees from individuals subject to the Negative Factors and Benefits Hold policies.**

30. USCIS offers optional "premium processing" for an additional fee. *See* 8 C.F.R. § 106.4(c)(21). The fee varies by application type and ranges from $1,780.00 to $2,965.00. *See* USCIS, *Calculate Your Fees,* available at https://www.uscis.gov/feecalculator?form=i-907.

31. Congress expanded premium processing through the Emergency Stopgap USCIS Stabilization Act, Public Law 116-159 (Oct. 1, 2020). USCIS promises to

refund the fee if the adjudication is not completed within the stated period in the Federal Regulations. 8 C.F.R. § 106.4(f)(4); 8 C.F.R. § 106.4(e)(21) ("Application for employment authorization: 30 business days."). Several Plaintiffs paid premium processing fees for petitions that remain subject to the Benefits Hold, even though the hold prevents USCIS from issuing final decisions while it remains in place.

32. USCIS continues to advertise premium processing to applicants whose applications are withheld due to the challenged policies, and it is accepting their payment of the premium processing fees.

## PARTIES

33. Plaintiff **ELSHEIKH ABDELRAHIM** is a clinical cardiac electrophysiologist at the North Mississippi Medical Center. Dr. Abdelrahim is a citizen of Sudan who was born in Germany, and now resides in Tupelo, Mississippi. Dr. Abdelrahim entered the United States in 2015 on a J-1 visa for medical residency training. He changed status in June 2023 to H-1B to begin work with North Mississippi Medical Center as a cardiac electrophysiologist. At that time, USCIS recommended Dr. Abdelrahim be granted a waiver of the foreign residency requirement on account of his important work, the critical need for medical professionals in his field, and his treating patients in a medically underserved community. On March 19, 2026, Dr. Abdelrahim's employer filed a Petition for Nonimmigrant Worker (Form I-129), receipt number IOE0936073106, with premium processing receipt number 1OEB0936073106, seeking a continuation of Dr. Abdelrahim's previously-approved H-1B status, which will expire on June 30, 2026. On April 3, 2026, USCIS issued a Request for Evidence stating that the petition would be presumptively denied due to

Dr. Abdelrahim's connection to Sudan. The Benefits Hold therefore risks impeding his medical career and immigration process, and imperiling Dr. Abdelrahim's cardiology patients. The Benefits Hold is also causing him substantial emotional hardship and uncertainty regarding his future status in the United States.

34. Plaintiff **RANA ABUSHAMMA** is a third-year neurology resident at the University of Alabama's Heersink School of Medicine. Dr. Abushamma is a citizen of Sudan, residing in Birmingham, Alabama. Dr. Abushamma entered the United States in 2023 on an H-1B visa to begin her residency at the University of Alabama at Birmingham. On March 2, 2026, Dr. Abushamma's employer filed a Petition for Nonimmigrant Worker (Form I-129), receipt number I0E0935840031, seeking a continuation of Dr. Abushamma's previously-approved H-1B status, which will expire on June 13, 2026. Dr. Abushamma also has a pending application for Temporary Protective Status (Form I-821), receipt number IOE9888983396. If the pending petitions are left unadjudicated, Dr. Abushamma will be forced from her four-year residency program and denied the opportunity to take her medical board exams. The Benefits Hold and Negative Factors policies therefore risk impeding her career and immigration process and is causing substantial emotional hardship and uncertainty regarding her future status in the United States.

35. Plaintiff **KHALED AL-ZUBAIDI** is a pediatric resident at the Medical College of Wisconsin Affiliated Hospitals (MCWAH). Dr. Al-Zubaidi is a citizen of Yemen and permanent resident of New Zealand since 2002, residing in Wauwatosa, Wisconsin. Dr. Al-Zubaidi entered the United States in 2022 on an H-1B visa to begin a three-

year fellowship training in pediatric infectious disease. In August 2025, Dr. Al-Zubaidi started a three-year pediatric residency training program. On May 9, 2025, Dr. Al-Zubaidi's employer filed a Petition for Nonimmigrant Worker (Form I-129), receipt number IOE0931779648, seeking a continuation of Dr. Al-Zubaidi's previously-approved H-1B status, which has now expired. A premium processing request was submitted for the H-1B petition on March 2026. Dr. Al-Zubaidi has been forced to leave his medical residency training program until his visa is extended, and due to the expiration of his visa he has been unable to renew his driver's license. The delay in securing the extension to his visa has resulted in serious financial hardship for himself and his family, an enormous disruption to his everyday life, his medical career, and imposes a substantial emotional hardship on him and his family.

36. Dr. Al-Zubaidi also has a pending I-140 Immigrant Worker Petition EB-2 based on a National Interest Waiver submitted in August 2024, receipt number IOE0927425114. The petition is based on his expertise in pediatric infectious diseases and includes his clinical experience, scholarly contributions, and letters of recommendation from U.S. pediatric infectious disease specialists.

37. Plaintiff **ENIOLA AJAO**, a citizen of Nigeria and resident of New Haven, Connecticut, is a full-time law student at Yale Law School with a graduation date of May 18, 2026. Ms. Ajao entered the United States in 2017 on a F-1 student visa to attend Haverford College. She continued in F-1 status while attending Amherst College, where she earned degrees in English and Computer Science, and law school at Yale University. Following her law school graduation in 2026, Ms. Ajao plans to

sit for the New York bar, and then begin work at The Center for Gender and Refugee Studies in August as the recipient of a prestigious post-graduate fellowship. In preparation for her fellowship, on March 1, 2026, Ms. Ajao filed an application for employment authorization (Form I-765), receipt number IOE9400604443. If her EAD is not approved before the start of the fellowship, the fellowship opportunity will be forfeited. If Ms. Ajao is not permitted to work in the United States, Ms. Ajao's degree and license will be significantly devalued. The Benefits Hold is therefore causing Ms. Ajao significant emotional distress and will result in substantial financial harm to her professional career if she is unable to begin her fellowship.

38. Plaintiff **SHAKRE A. ELMANE** is a citizen of Libya residing in Natick, Massachusetts. Plaintiff entered the United States on February 10, 2014, on an F-1 student visa, and later changed his status to H-1B to begin work for The MathWorks, Inc. Plaintiff has an approved employment-based visa, second preference (EB-2) and a pending petition to adjust status to lawful permanent resident (Form I-485) with the receipt number IOE0932259229, employment authorization application (Form I-765) receipt number IOE0932259230, and travel document (Advance Parole) application (Form I-131) receipt number IOE0932259231. The Benefits Hold has delayed and impeded Mr. Elmane from securing permanent resident status, which is causing him substantial emotional and financial hardship and uncertainty regarding his long-term status in the United States.

39. Plaintiff **MARIE-ANGE DELIMON** is a citizen of Haiti, residing in East Longmeadow, Massachusetts. Dr. Delimon is a doctor who entered the United States

14

on a visitor visa July 4, 2011.  She subsequently applied for and was approved for Temporary Protected Status (TPS) on November 14, 2011, and maintained her TPS protection until Department of Homeland Secretary Kristi Noam partially terminated TPS for Haiti on August 3, 2025. The original end date for TPS for Haitians had been February 3, 2026, which was reinstated pursuant to *Haitian Evangelical Clergy Ass'n v. Trump*, No. 25-cv-1464 (E.D.N.Y. July 1, 2025). Moreover, pursuant to *Miot et al. v. Trump et al.*, No. 25-cv-02471-ACR (D.D.C. Feb. 2, 2026) Haitian TPS has been automatically extended until August 3, 2026 by the court.  On November 17, 2025, Dr. Delimon's employer, Tech Foundry, Inc., filed an H-1B Change of Status petition (IOE0934636886) with premium processing for Dr. Delimon's. This petition is currently pending following a response by Tech Foundry on behalf of Dr. Delimon to a Request for Evidence that was issued by United States Citizenship and Immigration Services on December 2, 2025. Dr. Delimon works as the Community Impact Director at Tech Foundry, Inc. Dr. Delimon's husband is the derivative beneficiary of her H-1B petition.

40. If Dr. Delimon's H-1B Change of Status is not approved prior to August 3, 2026 or before the expiration of her TPS, she will be without status in the United States. Her spouse, likewise, will be without status and they both will have to return to Haiti. Dr. Delimon is a caregiver for her United States' citizen mother is a United States citizen and she and her spouse have two minor United States citizen daughters. If Dr. Delimon and her husband are forced to leave the United States, it would leave Dr. Delmon's mother without her critical care and their daughters without a home.

She and her family are distraught and the ongoing stress of her unknown immigration status is causing significant negative impacts on her psychological and emotional health. Her employer, likewise, will be significantly negatively impacted if Dr. Delimon is forced to depart the United States.

41. Plaintiff **SEYED ABDULAZIZ ESMAEILI** is a citizen of Iran, who was born in Kuwait, and resides in Chicago, Illinois. He entered the United States in 2015, as a F1 student, to begin his studies in Electrical and Electronics Engineering, at the University of Maryland - College Park.  After graduating with his Master of Science (MS), he enrolled in a PhD program in Computer Science at the University of Maryland - College Park. After graduating with his Doctorate, his application for OPT was approved and on April 26, 2024, the University of Chicago filed an H1-B petition for his employment as a Postdoctoral Scholar which was approved in 2024 and expires on August 14, 2027.

42. Dr. Esmaeili also has an approved Form I-140 self-petition for an employment-based visa, second preference (EB-2) based on an approved National Interest Waiver. On April 1, 2026, Dr. Esmaeili filed an Application to Adjust Status, Form 1-485, receipt number IOE0936255657, an Application for Employment Authorization, Form I-765, receipt number IOE0936255658, and an Application for Travel Document, Form I-131, receipt number IOE0936255659, based on his approved Form I-140. He received receipt notices for all three applications on April 3, 2026, as well as a biometrics appointment notice on April 17, 2026. Dr. Esmaeili also has a pending Form I-140 application seeking a first-preference employment visa, receipt

16

number IOE0935375134 with premium processing for which an RFE was issued on February 18, 2026.

43. The policies harm Dr. Esmaeili because he has been unable to secure an EAD, which will force him to leave the country due to the inability to work. He also planned to change employers this summer but is now unable to as any application filed will be subject to the pause. Dr. Esmaeili also won't receive an approval on any petition to transfer employment or new petition because of the pause. Mr. Esmaeili has never lived in or traveled to Iran. He was born and raised in Kuwait, which is not included in the Travel Ban.

44. Plaintiff **MESHKAT FARROKHI** is a citizen of Iran, residing in Brockton, Massachusetts. Ms. Farrokhi entered the United States in 2024 on an F-1 visa to begin her Master of Laws (LL.M.) studies at the LSU Paul M. Hebert Law Center. Following her law school graduation in May 2025, her employment authorization (Form I-765) was approved by the USCIS, and she began working as an immigration law clerk at Khanbabai Immigration Law. Ms. Farrokhi was selected in the FY 2027 H-1B Lottery, and her employer subsequently filed a petition for Nonimmigrant Worker (Form I-129) with the receipt number IOE9807519993, seeking to continue to employ her. On April 27, 2026, USCIS issued a request for Evidence, citing her nationality as a negative factor and requiring her to submit additional documentation to overcome this concern. Because Ms. Farrokhi's current work authorization expires in July 2026, if her H-1B petition is not approved, she will be unable to continue working. This would cause significant hardship by impeding her career and

17

immigration process and creating substantial emotional distress and uncertainty regarding her future status in the United States.

45. Plaintiff **MOHAMMAD-REZA GHOVANLOO** is a neurological scientist and professor focusing on pain management and the development of non-opioid therapeutic strategies. He was born in Iran and is also a citizen of Canada. He is a resident of New Haven, Connecticut. Professor Ghovanloo entered the United States in 2021 with a J-1 visa for individuals approved to participate in a work-and-study program. At the time he was employed as a Postdoctoral Associate in Neurology. His work has positively impacted many United States citizens, including U.S. veterans. Yale University has offered him a position as Assistant Professor of Neurology and, on November 10, 2025, filed a H-1B petition (Form I-129) with the receipt number IOE9316295045 for Professor Ghovanloo to change status to a nonimmigrant employed in a specialty occupation. Yale University paid for and requested premium processing of the petition. On December 19, 2025, USCIS sent Yale University a request for evidence, citing the Presidential Proclamation 10949 and seeking evidence of Professor Ghovanloo's value and service to the community and that a favorable exercise of discretion is warranted. Yale University responded to the request for evidence on February 5, 2026, providing evidence of Professor Ghovanloo's Canadian citizenship (issued in 2008), his travel history, evidence that he has no criminal history, evidence of his commitment to community service and the furtherance of important neurological research, and more. Professor Ghovanloo's

work authorization expired on February 14, 2026, and he is unable to continue in his research programs due to the policies.

46. Plaintiff **HABIB ALRAHMAN ALNEDARI** is a citizen of Yemen, residing in New Haven, Connecticut. Mr. Alnedari is a humanitarian aid specialist with over a decade of experience leading program development for emergency response initiatives around the world. He entered the United States on a J1 visa on April 4th, 2023. He subsequently applied for and was approved for Temporary Protected Status (TPS) on October 15, 2024, and maintained TPS protection until Department of Homeland Secretary Kristi Noam terminated TPS for Yemen on Feb. 13, 2026. The original end date for TPS for Yemen had been May 4, 2026, which has been reinstated pursuant to *Noor v. Noem that*, Case 1:26-cv-02103-DEH SDNY May 1, 2026). On March 26, 2024, Mr. Alnedari filed an I-589 application for asylum, receipt number MGL2451059536, that is still pending. On September 30, 2025, he filed a request for employment authorization based on that pending asylum case, receipt number IOE9643096766. Mr. Alnedari is now a postgraduate associate at Yale School of Public Health studying humanitarian response, particularly what is known as WASH - water, sanitation and hygiene— and its interconnection with public health.

47. If Mr. Alnedari's asylum case or employment authorization request are not approved before a final decision in the courts on TPS, then he will be without lawful status in the United States and will be forced to leave the country or be subject to arrest, detention and removal by Immigration and Customs Enforcement. This

19

outcome would impose severe and immediate hardship. Yale University would be required to terminate his visiting scholar appointment, cutting off his ability to continue his academic training, ongoing research projects, and professional development. The loss of his position would also eliminate his sole source of income, leaving him without financial stability or the means to support himself.

48. Beyond the academic and economic consequences, the risks associated with returning to Yemen are profound. Returning to Yemen would expose him to direct threats to his safety and life and lead to his death at the hands of the Al Houthi Militia, making forced departure from the United States not only professionally devastating but also extraordinarily dangerous.

49. Plaintiff **OSARODION IGBINOMWANHIA** is a pediatrician who works at a community health center in a federally designated Health Professional Shortage Area and the Medically Underserved Area of Holyoke, Massachusetts. Dr. Igbinomwanhia is a citizen of Nigeria. He lives in Chicopee, Massachusetts. Dr. Igbinomwanhia carries a patient panel of approximately 1,000 children. The majority of his patients are low-income, uninsured or underinsured individuals, many of whom have complex chronic conditions. Dr. Igbinomwanhia has been working for the same clinic since September 2022. In August 2025, Dr. Igbinomwanhia's employer filed an H-1B petition, receipt number IOE0933616408, for Dr. Igbinomwanhia to continue working for the clinic as a pediatrician. The health clinic paid for and requested premium processing of this petition. On January 30, 2026, USCIS sent Dr. Igbinomwanhia's employer a request for more evidence in support of the H-1B petition, which the

employer responded to on April 16, 2026. Dr. Igbinomwanhia's work authorization expires on May 8, 2026. The policies are causing substantial hardship to Dr. Igbinomwanhia's patients, family, and community. He has pediatric patients scheduled for the next three months but will be unable to serve them if his work authorization expires due to the Benefits Hold. Dr. Igbinomwanhia's wife and their two young children rely on his salary as the sole source of income for his family.

50. Plaintiff **TANIA JAHANPANAH** is an individual residing in New York, New York. She was born in Iran and is a citizen of Sweden. She entered the United States in F-1 student status in January 2023 and remained enrolled full-time at John Jay College of Criminal Justice through her graduation in December 2025. During her studies, she completed multiple internships pursuant to school-approved Curricular Practical Training (CPT), including internships with the Bronx District Attorney's Office, the City Bar Justice Center, and the NYC Law Department. After graduating, she sought post-completion Optional Practical Training ("OPT"), a form of employment authorization for recent F-1 graduates that allows them to obtain practical training experience related to their field of study. Her school's Designated School Official recommended OPT in SEVIS and issued an OPT-endorsed Form I-20, and she timely filed an OPT employment authorization application with USCIS in October 2025. She has received job offers that require work authorization, including an offer from the Office of the Special Narcotics Prosecutor that has been held open for her. USCIS has not adjudicated her OPT application and has indicated through

communications associated with her congressional inquiry that her application is subject to the agency's adjudicative hold policy

51. Plaintiff **AVID KHOUBROUYEPAK** is a citizen of Iran and currently resides in Southborough, Massachusetts. She entered the United States in 2024 on an F-1 visa to pursue a Master of Laws (LL.M.) degree at Suffolk University. Following her graduation, she was authorized to work pursuant to Optional Practical Training (OPT) under Form I-765 and was employed as a law clerk at Khanbabai Immigration Law. On June 11, 2025, her employer filed an H-1B petition on her behalf, Receipt Number IOE9205559526, which remains pending due to a pause in adjudications by USCIS. Her OPT employment authorization expired on April 1, 2026. Since that time, she has been without work authorization.

52. The continued delay in adjudication has caused and continues to cause substantial and ongoing harm to Ms. Khoubrouyepak, including the interruption of her lawful employment, impairment of her career progression, and disruption of her immigration pathway. It has further resulted in significant emotional distress, financial instability, and prolonged uncertainty regarding her ability to lawfully remain and work in the United States

53. Plaintiff **SERGIO POLI DE FRIAS** is a physician and scientist focused on pulmonary and critical care medicine. Dr. Poli de Frias specializes in patients undergoing lung transplantation and he researches lung-related and autoimmune diseases. Dr. Poli De Frias is a citizen of Venezuela and entered the United States in 2016 as a J-1 non-immigrant Research Scholar participating in pulmonary research

22

and later medical residency training and fellowship in Pulmonary Disease and Critical Medicine. In 2023, USCIS granted Dr. Poli de Frias Temporary Protected Status. He lives in Brookline, Massachusetts and is employed at Harvard Medical School Teaching Hospital and Brigham and Women's Hospital in Boston, Massachusetts. In May 2024, USCIS approved an EB-2 National Interest Waiver, reflecting a determination that his professional contributions substantially benefit the United States. He has also received approval of an EB-1 visa petition based on scientific achievements. Most recently, USCIS approved his H-1B petition in August 2025, providing him authorization to remain and work until September 2028. He has a pending application to adjust status to lawful permanent resident (Form I-485), receipt number IOE0934366152, a pending application for renewal of employment authorization (Form I-765) receipt number IOE0934366153, and a pending application for advanced parole (Form I-131) receipt number IOE0934366154 that are all subject to the Benefits Hold. The delay and uncertainty in his immigration status has caused significant professional and personal limitations.

54. Plaintiff **ISSA POUR-GHAZ,** a dual Iranian and Canadian citizen, and resident of Carbondale, Illinois, is a cardiologist working in a community designated as a Health Profession Shortage Area. Dr. Pour-Ghaz entered the United States in 2017 as a J-1 non-immigrant participating in medical residency training program. He completed his residency in internal medicine in June 2020 at the University of Tennessee College of Medicine, and a fellowship in cardiovascular disease in June 2023 at the same University. In 2023, USCIS approved his change of status to H-1B

non-immigrant in a specialty occupation. In 2023, USCIS approved his change of status to H-1B non-immigrant in a specialty occupation as a medical doctor working in a federally designated Health Professional Shortage Area. On February 13, 2026, Dr. Pour-Ghaz's employer filed a new H-1B petition with receipt number IOE0935652709, for Dr. Pour-Ghaz to continue as a cardiologist in an underserved area. USCIS issued an RFE on March 3, 2026. Dr. Pour-Ghaz also filed a Form I-140 self-petition for EB-2 classification with receipt number IOE0934787805 as a Physician National Interest Waiver on the basis of his employment as a cardiologist in the Carbondale, Illinois area. Although his employment contract extends for two more years, his work authorization ends on July 9, 2026. His wife also has a pending application for extension of H-4 status as a derivative to Dr. Pour-Ghaz's status, receipt number WAC2690069889.

55. Plaintiff **THI THI LWIN** is a citizen of Burma residing in Eau Claire, Wisconsin. Plaintiff entered the United States in 2023 on an H-1B non-immigrant visa to begin work for the Mayo Clinic. Prior to her relocation to the United States, Ms. Lwin was employed by the United States Department of State at the U.S. Embassy in Rangoon, Burma, from 2019 to 2024 as a Medical Laboratory Technologist. Plaintiff has a petition to extend her H1-B petition (Form I-129) with the receipt number IOE0935022824 filed on her behalf by her employer, the Mayo Clinic. Her petition was issued a Request for Evidence on January 6, 2026, citing her nationality as a negative factor that requires her to submit evidence to overcome this factor, despite submitting substantial evidence regarding her prior employment with

24

the State Department and the importance of her work with the Mayo Clinic. Her employer submitted a timely response to the Request for Evidence but the petition remains pending. If the petition is left unadjudicated, Ms. Lwin will be forced from her position with the Mayo Clinic. The policies therefore risk impeding her career and immigration process and is causing substantial emotional hardship and uncertainty regarding her future status in the United States.

56. Plaintiff **SAEEDEH MIRBAGHERI** is a Neuroradiology Attending Physician and Neuroradiology Research Director at the University of Vermont Health Network. Dr. Mirbagheri is a citizen of Iran who resides in Williston, Vermont. Dr. Mirbagheri entered in the United States in 2010 and later changed status to the J1 Research Scholar to join Johns Hopkins Neurovascular Imaging Lab. Later she obtained sponsorship by Educational Commission for Foreign Medical Graduates (ECFMG) for medical residency training. On May 23, 2022, Dr. Mirbagheri was granted a waiver of the foreign residency requirement because of her work treating patients from medically underserved communities and she was granted a change of status to H-1B to begin work with the University of Vermont as well as a second H-1B for research. On May 8, 2025, Dr. Mirbagheri's employer filed a Petition for Nonimmigrant Worker (Form I-129), receipt number IOE0931803701, seeking continuation of Dr. Mirbagheri's previously-approved H-1B status, which expired on July 10, 2025. Dr. Mirbagheri is unable to fully participate in her academic responsibilities, including her research activities, as the 240-day extension period has run out.

25

57. Dr. Mirbagheri has a two-year old United States citizen child and is married to a United States citizen, Colonel in the Army Reserves, and resident of Williston, Vermont. On August 29, 2025, Dr. Mirbagheri's husband filed a Petition for Alien Relative (Form I-130), receipt number IOE0933617208, for Dr. Mirbagheri. On the same date, Dr. Mirbagheri filed an Application to Register Permanent Residence or Adjust Status (Form I-485), receipt number IOE0933617207. USCIS has not acted on either Petition. The Benefits Hold has delayed and impeded Dr. Mirbagheri and her husband's plans for expanding their family and building their life in the United States and caused substantial emotional hardship and uncertainty regarding their ability to continue to reside in the United States as a family unit. It has also impacted her ability to support her family, continue her research, and advance her medical career.

58. Plaintiffs, in sum, fall into several recurring categories. Some are physicians, medical researchers, and other highly skilled professionals whose pending petitions are needed to continue patient care, research, or other public-interest work. Others are F-1 graduates whose OPT applications are tied to fixed post-graduation timelines. Many seek H-1B extensions or changes of status needed to continue work in their trained fields, while others await decisions needed to preserve their immigration status. The details differ, but for all of them the injury is the same: USCIS has either indefinitely suspended final adjudication of their applications or made nationality an adverse factor, without statutory authorization.

59. Defendant **JOSEPH B. EDLOW** is the Director of U.S. Citizenship and Immigration Services (USCIS) and is sued in his official capacity. He is responsible for directing USCIS operations and implementing Benefit Hold and related adjudicatory freezes.

60. Defendant **MARKWAYNE MULLIN** is the Secretary of the Department of Homeland Security (DHS) and is sued in his official capacity. He is responsible for supervising DHS, issuing and implementing the Benefits Hold and Negative Factors policies, and directing USCIS to adopt the challenged adjudicatory freezes.

## JURISDICTION AND VENUE

61. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including the APA, 5 U.S.C. §§ 555(b), 701–706, and the Mandamus Act, 28 U.S.C. § 1361.

62. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202 and injunctive relief under 5 U.S.C. § 706.

63. Plaintiffs challenge USCIS's unreasonable delay and unlawful withholding of a final decision on their properly filed petitions and the agency's policy, as applied to them, that prohibits final adjudication of covered benefit requests.

64. Venue is proper under 28 U.S.C. § 1391(e) because Plaintiffs DELIMON, ELMANE, FARROKHI, IGBINOMWANHIA, KHOUBROUYEPAK, and POLI DE FRIAS reside in this District, substantial events giving rise to the claims occurred here, and there is no real property at issue in this case.

65. Joinder is proper in this action as the questions of law are substantially identical to all Plaintiffs in this action.

**CLAIMS FOR RELIEF**

**Count I**:
<u>Writ of Mandamus (28 U.S.C. § 1361)</u>

66. Plaintiffs repeat and incorporate by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

67. Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

68. A mandamus plaintiff must demonstrate that: (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 113 (D.D.C. 2005); see also, *Patel v. Reno*, 134 F.3d 929, 933 (9th Cir. 1997) (duty to adjudicate an immigrant visa application). Plaintiffs meet all three of these criteria.

69. Defendants have a clear non-discretionary duty to adjudicate Plaintiffs' petitions and Defendants owe a duty to act upon Plaintiffs' pending petitions. *See, e.g.*, *Iddir v. INS,* 301 F.3d 492, 500 (7th Cir. 2002) (duty to adjudicate applications under the diversity lottery program); *Patel*, 134 F.3d at 932-33 (duty to adjudicate visa application).

70. Defendants also have a nondiscretionary duty to timely adjudicate Plaintiffs' immigration petitions. *See, e.g.*, *Liu v. Novak*, 509 F. Supp. 2d 1, 9 (D.D.C. 2007) (holding that the APA requires the government to act within a reasonable period of time); see also *Sierra Club v. Thomas*, 828 F.2d 783, 794 (D.C. Cir. 1987) (stating that

28

"regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice").

71. As noted above, Congress has not granted the authority to the executive branch to put a hold on immigration benefits adjudications. Rather, Congress has made clear what it considers a reasonable time for adjudicating immigration benefits. "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition." *See* 8 U.S.C. § 1571 and (Pub. L. 106–313, title II, §202, Oct. 17, 2000, 114 Stat. 1262.).

72. Defendants have no legal basis for subjecting Plaintiffs' petitions to increased scrutiny or for failing to proceed with the prompt adjudication of their applications, and that they have no adequate remedy at law for Defendant's failure to timely adjudicate the petitions.

73. Nonetheless, Defendants have willfully and unreasonably failed to adjudicate Plaintiffs applications in a reasonably timely matter, thereby depriving Plaintiffs of their rights to have properly filed applications decided in a timely manner.

74. Timely adjudication of Plaintiffs' petitions is a purely ministerial, non-discretionary act which the Defendants are under obligation to perform in a timely manner; the Plaintiffs have no alternative means to obtain adjudication; and their right to issuance of the writ is "clear and indisputable." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980); *see also First Federal Savings and Loan Ass'n of*

29

*Durham*, 860 F.2d at 138; *Patel*, 134 F.3d at 933 ("[W]e find that the consulate had a duty to act and that to date ... the consulate has failed to act in accordance with that duty and the writ [of mandamus] should issue.")

75. Accordingly, Plaintiffs are entitled to an order directing Defendants to immediately adjudicate Plaintiffs' pending applications consistent with the relief available under 28 U.S.C. § 1361.

**Count II**:
Agency Action Wrongfully Withheld or Unreasonably Delayed (5 U.S.C. § 706(1))

76. Plaintiffs repeat and incorporate by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

77. Pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 555(b), Defendant has a nondiscretionary duty to act "within a reasonable time" upon matters presented to them. The APA, 5 U.S.C. § 706(1), gives the Court the authority to compel agency action unlawfully withheld or unreasonably delayed.

78. USCIS is statutorily obligated to process benefits applications. For example, in describing its "Purpose and Background," USCIS states that "[t]he Homeland Security Act created USCIS to enhance the security and efficiency of national immigration services by focusing exclusively on the administration of benefit applications," a purpose that is distinct from the enforcement and border security functions vested in Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP). U.S. Citizenship & Immigration Servs., *Policy Manual —* Vol. 1, Part A, Ch. 1: Purpose and Background (last updated Nov. 3, 2025), https://www.uscis.gov/policy-manual/volume-1-part-a-chapter-1.

79. Plaintiffs are eligible for and have fulfilled all statutory requirements for adjudications of their petitions. Plaintiffs have submitted all necessary information and evidence supporting the applications, and paid all applicable fees.

80. In addition, Plaintiffs ABDELRAHIM, AL-ZUBAIDI, DELIMON, ESMAEILI, IGBINOMWANHIA, and GHOVANLOO paid premium processing and in return were offered expeditious processing of their petitions.

81. Defendants have withheld the adjudicative and administrative functions delegated to them by law for all Plaintiffs.

82. Further, Defendants' delay in acting on Plaintiffs' immigration petitions constitutes agency action unreasonably delayed because the length of the delays is inconsistent with the very purpose and timelines recognized by statute and by regulation.

83. Plaintiffs face irreparable harm if the failure to act persists.

84. Accordingly, Plaintiffs are entitled to an order directing Defendants to immediately adjudicate Plaintiffs' pending applications consistent with the relief available under 5 U.S.C. § 706(1).

**Count III**:
Agency Action that is Arbitrary and Capricious (5 U.S.C. 706(2))

85. Plaintiffs repeat and incorporate by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

86. Pursuant to the APA, 5 U.S.C. §§706(1), 706(2)(A), a reviewing court may also "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with

31

law." In reviewing a claim of arbitrary agency action, the court must examine whether the "'agency action [is] reasonable and reasonably explained.'" *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 98 (1st Cir. 2025). "An agency action is arbitrary and capricious when the agency 'relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise.'" *Bos. Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016).

87. "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent thereof, or failure to act." 5 U.S.C. § 551(13).

88. The Negative Factors and Benefits Hold policies are final agency actions that are reviewable under the APA.

89. USCIS did not provide a reasoned explanation for the Negative Factors and Benefits Hold policies. The narrow concerns noted by the government are insufficient to support the sweeping policies or to explain why they should be applied to individuals who have already been inspected, admitted, and are residing within the United States without incident.

90. USCIS did not provide a reasoned explanation for extending the policy to counties, like Burma, that do not have identified vetting concerns and are subject to the Travel Ban based solely on overstay and repatriation rates. USCIS has not offered any justification for applying the Negative Factors and Benefits Hold policies to individuals seeking to maintain lawful status based on overstay and repatriation

32

concerns where the hold only serves to prevent plaintiffs from maintaining lawful status.

91. USCIS failed to meaningfully consider the reliance interests of the applicants, their families, employers, patients, and clients affected by the policies. Plaintiffs are skilled professionals who seek permission to continue to work within their field of expertise. The Negative Factors and Benefits Hold policies are placing a great burden on their employers and the communities they serve. Defendants were aware that the policies would apply to individuals like Plaintiff ESMAEILI who have been found to have plans to work in the United States that serve the National Interest and were worthy of a National Interest Waiver. Similarly, Plaintiffs ABDELRAHIM and IGBINOMWANHIA have approved petitions and waivers based on the agency's recognition that they work in locations where there is a dire need for medical professionals. Nonetheless, USCIS failed to consider the known needs and interests of their communities in maintaining their active employment.

92. USCIS failed to consider policy alternatives that meaningfully balance those interests with the government's asserted reasons for the policies. The record does not contain any evidence that USCIS attempted to align the policy with its limited concerns, or to narrow the policy to account for predictable harms likely to result from the policies.

93. For example, USCIS failed to explain why exceptions at least as broad as those applicable to the Travel Ban should not be applied to the Negative Factors and Benefits Hold policies. For example, Plaintiffs ABDELRAHIM, POUR-GHAZ,

JAHANPANAH, AL-ZUBAIDI, ESMAEILI, and GHOVANLOO, have citizenship or permanent residency in a country that is not subject to the Travel Ban.

94. Defendant therefore promulgated the Negative Factors and Benefits Hold policies unlawfully and in an arbitrary and capricious manner. The policies should be held unlawful and set aside by the Court.

**Count IV**:
Agency Action Contrary to Law (5 U.S.C. 706(2))

95. Plaintiffs repeat and incorporate by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

96. Pursuant to the APA, 5 U.S.C. §§706(1), 706(2)(A), 706(2)(D), a reviewing court may also "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." For purposes of review under Section 706(2), an agency acts contrary to law if it does not comply with its own regulations. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) (the term "law" under Section 706 of the APA "includes, of course, agency regulations that have the force of law").

97. The Negative Factors and Benefits Hold policies are final agency actions that are reviewable under the APA.

98. The INA does not permit Defendants to withhold adjudication of benefits petitions. For adjustment of status applications, USCIS's regulations permit noncitizens to file applications seeking an adjustment of status, 8 C.F.R. § 245.2(a)(2), and then specify that "[t]he applicant shall be notified of the decision of the director," *id*. § 245.2(a)(5)(i).

34

99. The INA imposes obligations on Defendants when they accept premium processing fees, like those paid by Plaintiffs ABDELRAHIM, AL-ZUBAIDI, DELIMON, ESMAEILI, IGBINOMWANHIA, and GHOVANLOO.

100.    The regulations governing work authorization similarly require adjudication of such applications. Noncitizens seeking employment authorization documents "must apply" to USCIS. 8 C.F.R. §§ 274a.12(a), (c). By regulation, USCIS specifies that if "the application is granted, the alien shall be notified of the decision and issued an employment authorization document," and if "the application is denied, the applicant shall be notified in writing of the decision and the reasons for the denial." *Id*. §§ 274a.13(b), (c).

101.    Under the INA, Plaintiffs also have a right to be free from discrimination based on their national origin. *See* 8 U.S.C. § 1152(a)(1)(A) ("[N]o person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence.").

102.    Here, Defendant promulgated the Negative Factors and Benefits Hold policies to unlawfully withhold USCIS benefits based upon an applicant's national origin in direct violation of the Nondiscrimination Clause of the INA. Thus, the policies violate the INA, and should be held unlawful and set aside by the Court.

**Count V**:
Agency Action that is Contrary to the Fifth Amendment (5 U.S.C. 706(2))

103.    Plaintiffs repeat and incorporate by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

35

104.    The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "No person shall ... be deprived of life, liberty, or property, without due process of law." The Clause contains an equal protection component.

105.    The Policy Memos cause discrimination to Plaintiffs, who are physically present in the United States, on the basis of national origin, a suspect classification, and are not narrowly tailored to serve a compelling governmental interest, and thereby violate the equal protection component of the Due Process Clause.

106.    Further, Defendant lacks any true rational basis for the national origin discrimination.

107.    Nationality is not a permissible criterion for domestic adjudication of adjustment of status, EADs, or H-1B extensions.

108.    Additionally, the policies were substantially motivated by an intent to discriminate against citizens from travel ban countries, on whom it has a disparate effect, in further violation of the equal protection component of the Due Process Clause.

109.    Thus, the Negative Factors and Benefits Hold policies should be held unlawful and set aside by the Court

**Count VI**:
Promulgation of Agency Policy Without Notice and Comment (5 U.S.C. § 706(2)(D))

110.    Plaintiffs repeat and incorporate by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

111.    The APA requires administrative agencies to follow notice-and-comment rulemaking procedures to promulgate substantive rules. 5 U.S.C. § 553.

112.    Defendants promulgated and relied upon the policies, procedures, and practices placing on hold all pending benefits requests for aliens from countries listed in PP 10949, without authority and without notice-and-comment rulemaking. Defendants' actions are therefore unlawful.

113.    Defendants' policies, procedures, and practices placing on hold all pending immigration benefits for nationals from 39 countries, and the Palestinian Authority, constitutes a substantive rule subject to the APA's notice-and-comment requirements.

114.    Defendants' policies, procedures, and practices suspending the adjudication of immigration benefits for citizens from 39 countries plus the Palestinian Authority constitute a substantive rule because it affirmatively circumscribes USCIS's Congressional mandate and nondiscretionary duty to adjudicate and issue decisions for properly submitted immigration applications.

115.    Defendants' policies, procedures, and practices halting the adjudication of pending immigration benefits constitute a substantive rule because it is a categorical rule which applies to almost all pending benefits for applicants of 39 countries, plus the Palestinian Authority.

116.    In implementing USCIS's policies, procedures, and practices halting adjudication of immigration benefits for beneficiaries from 39 countries, plus the Palestinian Authority, Defendant impermissibly announced a new rule without undertaking notice-and-comment rulemaking.

117.     Thus, the Negative Factors and Benefits Hold policies must be held unlawful and set aside by the Court

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

A.  Declare that Policy Alert PA-2025-26, Policy Memorandum PM-602-0192 and the "significant negative factor" analysis announced by Defendants exceed the authority granted by the INA and are unlawful;

B.   Declare that the directives violate the APA, including section 553 procedural requirements and section 706 substantive constraints;

C.  Vacate the directives as applied to domestic USCIS adjudications;

D.  Enjoin Defendants from applying the vacated directives in domestic adjudications or imposing nationality-based suspensions absent statutory authority;

E.   Order Defendants to adjudicate Plaintiffs' applications in accordance with statutory and regulatory requirements;

F.   Award attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and,

G.  Grant any further relief the Court deems just and proper.

Dated: May 1, 2026                                 Respectfully Submitted,

*/s/ Kerry E. Doyle*
KERRY E. DOYLE
Green and Spiegel LLC
1524 Delancey St., 4th Floor
Philadelphia, PA 19102
(617) 216-1248
kdoyle@gands-us.com

MAHSA KHANBABAI
Khanbabai Immigration Law
115 Main Street, Ste 1B
Easton, MA 02356
(508) 297-2065
Mahsa@mk-immigration.com

JESSICA A. DAWGERT
Ariela Lake Law & Consulting PLLC
3355 Hudson St., #7098
Denver, CO 80207
(303) 531-6634
jess@allc.law

SARAH S. WILSON
Colombo & Hurd, PL
301 E. Pine St. #450
Orlando, FL 32801
(407) 478-1111
swilson@colombohurd.com