UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELSHEIKH ABDELRAHIM, et al., <br><br> Plaintiffs <br><br> v. <br><br><br> JOSEPH B. EDLOW, et al., <br><br> Defendants. | Case No.: 1:26-cv-11995 <br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

## INTRODUCTION

On May 1, 2026, Plaintiffs, seventeen highly educated and skilled professionals, filed this underlying action seeking an order from this Court setting aside the United States Citizenship and Immigration Service ("USCIS") policies that preclude the agency from adjudicating Plaintiffs' pending immigration petitions and applications, and directing USCIS to adjudicate the pending petitions without considering Plaintiffs' nationality as a dispositive factor. Plaintiffs now move for a preliminary injunction requiring Defendants to resume processing Plaintiffs' pending immigration petitions and applications.

This relief is warranted. Courts across the country, including this one, have been striking down USCIS's policies as unlawful and granting preliminary injunctions to order the agency to adjudicate pending petitions and applications.[1] Moreover, further delay of Plaintiffs' applications

---

[1] *Doe v. Trump*, 1:25-cv-13946 (D. Mass. Dec. 23, 2025); *Doe v. Trump*, 1:26-cv-11382 (D. Mass. Mar. 20, 2026); *Saghafi v. Edlow*, 8:26-cv-100 (D. Md. Jan. 11, 2026); *Bowser v. Noem*, 1:26-cv-10382 (D. Mass. Jan. 27, 2026); *Varniab v. Edlow*, 5:25-cv-10602 (N.D. Cal. Dec. 11, 2025); *Behdin v. Edlow*, 5:26-cv-556 (N.D. Cal. Jan. 19, 2026); *Karimi v. Noem*, 5:26-cv-5049 (W.D. Ark. Feb. 20, 2026); *Doe v. USCIS*, 1:26-cv-2389 (N.D. Ill. Mar. 3, 2026); *Meschi v. Edlow*, No. 3:26-cv-1993 (N.D. Cal. Mar. 8, 2026); *Roghaee v. Mullin*, 2:26-cv-4160 (C.D. Cal. Apr. 17, 2026); *Doe v. Mullin*, 2:26-cv-1502 (W.D. Wash. May 1, 2026).

and petitions will cause irreparable harm to each plaintiff. Accordingly, this Court should grant preliminary injunctive relief.

## RELEVANT FACTS

### I.     USCIS's Nationality-Based Adjudication Policies

Defendants' policies that are applicable to this case began on August 19, 2026, when USCIS issued a Policy Alert, *Clarifying Discretionary Factors in Certain Immigration Benefit Requests*, that announced revisions to the USCIS Policy Manual and allowed adjudicators to consider a country of nationality as a discretionary factor in adjudicating benefits applications. *See* Ex. A, USCIS PA-2025-16 ("Negative Factors policy"). This policy found justification in the Presidential Proclamation No. 10949, which ordered agencies to restrict the entry of foreign nationals from 19 countries pursuant to 8 U.S.C. § 1182(f), to noncitizens seeking benefits within the United States. *See* Pres. Proc. 10949, *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 24497 (June 4, 2025) ("Travel Ban").

On November 27, 2025, USCIS issued an additional Policy Alert, PA 2025-26, directing adjudicators to treat a noncitizen's country of origin as a "significant negative factor" in discretionary adjudications where the applicant comes from a Travel Ban country (or other disfavored countries). *See* ECF No. 1-1. Five days later, on December 2, 2025, USCIS issued another memorandum, PM-602-0192, this time directing USCIS personnel to "[p]lace a hold on pending benefits requests for aliens from countries listed in" the Travel Ban "pending a comprehensive review, regardless of entry date." *See* ECF No. 1-2; *Doe, et al. v. Trump, et al.*, 1:25-cv-13946-JEK, 2026 WL 1170971, at *3 (D. Mass Apr. 30, 2026) (describing the policy). Collectively, these alerts and memorandum create an agency "Benefits Hold" policy to hold all adjudications for individuals from countries identified in the Travel Ban. "The length of this hold

is unclear at best. . . ." *Saghafi v. Edlow*, 26-cv-100, 2026 WL 1127468, at *3 (D. Md. Apr. 24, 2026) (quoting *Bowser v. Noem*, 26-cv-10382, 2026 WL 555624, at *2 (D. Mass. Feb. 27, 2026)). Notably, since the hold went into effect, USCIS has provided no further guidance or instruction on the duration of this policy.

On December 16, 2025, the President issued a second proclamation expanding the list of countries subject to the entry ban to 39 countries.[2] *See* Pres. Proc. 10998, *Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States*, 90 Fed. Reg. 59717 (Dec. 16, 2025). On January 1, 2026, USCIS issued a third memorandum, extending the Benefits Hold to cover all 39 countries and confirming that the hold bars "issuance of a final decision" on "all pending benefit applications" with only limited exceptions. *See* ECF No. 1-3. USCIS made clear that the Benefits Hold will remain in effect until the USCIS director lifts or modifies the hold, although the agency was permitted to review, interview, re-interview, and refer cases or individuals to law enforcement agencies, including Immigration and Customs Enforcement. *See* ECF No. 1-1 at 3, ECF No. 1-2 at 5; *Saghafi*, 2026 WL 1127468, at *3 (discussing the memoranda). Although USCIS has indicated that there is an internal process for lifting holds on individuals or groups, including "applications associated medical physicians" and "certain employment authorization documents,"[3] there is no information about who is subject to the lifting of the hold or which noncitizens are included in these vague categorizations, absent those who have secured

---

[2] The 39 countries (plus the Palestinian Authority) subject to the Travel Ban are Afghanistan, Angola, Antigua and Barbuda, Benin, Burkina Faso, Burma, Burundi, Chad, Republic of the Congo, Cote d'Ivoire, Cuba, Dominica, Equatorial Guinea, Eritrea, Haiti, Gabon, The Gambia, Iran, Laos, Libya, Malawi, Mali, Mauritania, Niger, Nigeria, Sierra Leone, Senegal, Somalia, South Sudan, Sudan, Syria, Tanzania, Togo, Tonga, Turkmenistan, Venezuela, Yemen, Zambia, and Zimbabwe.

[3] *See Update on USCIS' Strengthened Screening and Vetting*, available at https://www.uscis.gov/newsroom/alerts/update-on-uscis-strengthened-screening-and-vetting (last visited May 21, 2026).

relief through litigation. *See Behdin v. Edlow*, 26-cv-566-SVK, 2026 WL 1031079, at *2 (N.D. Cal. Apr. 16, 2026); *see also* Exhibit B (USCIS media statement dated March 31, 2026, indicating that all "Optional Practical Training (OPT) applications for Iranian nationals are banned and will not be processed, in accordance with Presidential Proclamation 10998 which restricts entry and visa issuance for nationals of certain countries.").

## II.    Plaintiffs are seventeen individuals within the United States who are being harmed by USCIS's policies.

Plaintiffs are all highly educated individuals who were permitted to enter the United States to study and work in specialized fields. Seven plaintiffs are doctors,[4] some of whom are working in communities where there is a recognized shortage of doctors.[5] Yet, despite USCIS's statement that the Benefits Hold should be lifted for "medical professionals," their applications remain on hold. In addition, Plaintiffs include five individuals with advanced degrees,[6] three students in fields such as neurology,[7] two scientists,[8] and two who focus on community impact, including humanitarian programs.[9] Each plaintiff is waiting for USCIS to adjudicate at least one application; many are waiting for multiple applications to be adjudicated. Moreover, six plaintiffs paid an additional fee of between $1,780 and $2,965 for premium processing, and USCIS, in return for the additional fee, promised expeditious processing of their petition.[10]

---

[4] *See* Exhibit C, Plaintiff Declarations, at 4-5 (Abushamma), 6-8 (Al-Zubaidi), 43-45 (Mirbagheri), 28-30 (Igbinomwanhia), 36-37 (Poli De Frias), and 38-40 (Pour-Ghaz).

[5] *See* Exhibit C, 28-30 (Igbinomwanhia), 34-35 (Pour-Ghaz Declarations).

[6] *See* Exhibit C, 9-11 (Ajao), 15-17 (Elmane), 18-20 (Esmaeili), 21-23 (Farrokhi), 31-33 (Jahanpanah), and 34-35 (Khoubroyepak).

[7] *See* Exhibit C, 4-5 (Abushamma),  26-27 (Alnedari).

[8] *See* Exhibit C, 24-25 (Ghovanloo), 41-42 (Lwin).

[9] *See* Exhibit C, 26-27 (Alnedari), 12-14 (Delimon).

[10] *See* Exhibit C, 1-3 (Abdelrahim), 6-8 (Al-Zubaidi), 12-14 (Delimon), 18-20 (Esmaeili), 28-30 (Igbinomwanhia), 24-25 (Ghovanloo).

Plaintiffs are all suffering significant financial and emotional harm based on USCIS's Benefits Hold. For example, several Plaintiffs are unable to work, seek employment, and are losing career advancement opportunities.[11] Some are suffering medical and mental health concerns exacerbated by the Hold.[12] Many also have connections to U.S. citizens and communities in the U.S., for example, Plaintiff Delimon is the primary caregiver for her ill and elderly U.S. citizen mother,[13] and Plaintiff Mirbagheri is married to a U.S. citizen who served in the U.S. army.[14] Furthermore, some Plaintiffs are doctors who are or soon will be unable to see patients in areas where there are no other available doctors.[15] For example, Plaintiff Pour-Ghaz is a cardiologist who works in a medically underserved area and is the only cardiologist providing services at a satellite clinic twice a week, and at a hospital two days a week.[16] That community will have no cardiologist if he is unable to work past July 9, 2026, when his current authorization expires. Plaintiff Igbinomwanhia is a pediatrician who manages a panel of 1,000 children who, since his work authorization expired, are having their medical appointments cancelled and are left vulnerable without a doctor.[17] Plaintiffs' applications may never be adjudicated absent action from this Court. Because Defendants' unlawful policy is causing irreparable and significant harm, this Court should grant immediate injunctive relief.

---

[11] *See* Exhibit C, 1-3 (Abushamma), 6-8 (Al-Zubaidi), 9-11 (Ajao), 15-17 (Elmane), 18-20 (Esmaeili), 24-25 (Ghovanloo), 28-30 (Igbinomwanhia), 34-35 (Khoubroyepak), 41-42 (Lwin), 43-45 (Mirbagheri),  36-37 (Poli de Frais).

[12] *See* Exhibit C, 1-3 (Abushamma), 15-17 (Elmane).

[13] *See* Exhibit C, 12-14 (Delimon).

[14] *See* Exhibit C, 43-45 (Mirbagheri).

[15] *See* Exhibit C, 38-40 (Pour-Ghaz), 28-30 (Igbinomwanhia).

[16] *See* Exhibit C, 38-40 (Pour-Ghaz).

[17] *See* Exhibit C, 28-30 (Igbinomwanhia).

**ARGUMENT**

### I.    Legal Standard.

A preliminary injunction requires the moving party to demonstrate: "(1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm" in the absence of relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020); *Maine Forest Products Council v. Cormier*, 51 F.4th 1, 5 (1st Cir. 2022); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 19-20 (2008).

### II.    Plaintiffs Can Show A Substantial Likelihood Of Success On The Merits.

The first factor "'weighs heaviest in the decision scales,'" and while Plaintiffs need only succeed on one count in the complaint to meet the first factor, they can demonstrate success on the merits on every count in the complaint. *See Doe*, 2026 WL 1170971, at *4 (quoting *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009)). In any event, Plaintiffs focus on the counts under the Administrative Procedure Act ("APA") in this motion.

#### A.  USCIS's challenged policies violate the Administrative Procedure Act.

Plaintiffs can demonstrate success on Counts III through VI. The Benefits Hold and Negative Factor policies violate the APA because they are arbitrary and capricious, contrary to law, and were promulgated without notice and comment. The APA requires a Court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(D). Critical here, neither the Constitution nor the Immigration and Nationality Act ("INA") grants the executive branch "authority to replace the comprehensive rules and procedures set forth in the INA and the governing regulations with an extra-statutory, extra-regulatory regime" for

limiting immigration. *Refugee and Immigrant Cener for Education and Legal Services ("RAICES") v. Noem*, 793 F. Supp. 3d 19, 42 (D.D.C. 2025).

As a threshold issue, the Benefits Hold policy and corresponding Negative Factors policy is a final agency action subject to APA review. *Doe*, 2026 WL 1170971, at *5-7; *Bowser v. Noem*, 26-cv-10382, 2026 WL 555624, at *4-5 (D. Mass. Feb. 27, 2026); *Saghafi*, 2026 WL 1127468, at *6; *see Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (defining a final agency action as one that "mark(s) the 'consummation' of the agency's decision-making process" and that by which "'rights or obligations have been determined,' or from which 'legal consequences will flow.'") (citations omitted). The policy alerts and memorandum "mark the 'consummation' of the agency's decisionmaking process" as they impose obligations and guidance binding all adjudicators and carries legal consequences. *See Saghafi*, 2026 WL 1127468, at *6. Moreover, the Benefits Hold policy is not temporary, "tentative[,] or interlocutory." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1160 (W.D. Wash. 2025); *cf. Bennett*, 520 U.S. at 177-78. It represents agency policy, binding adjudicators according to its terms. *Doe*, 2026 WL 1170971, at *7. As other courts have held in addressing this issue, agency policy may be a final agency action even if subject to revision through subsequent actions. *Bowser*, 2026 WL 555624, at *5; *Saghafi*, 2026 WL 1127468, at *6; *Behdin*, 2026 WL 1031079, at *19. Indeed, although the policy memoranda indicate they will be reviewed and reconsidered after 90 days, we are nearing the 180-day mark with no changes or updates to the policy. *Doe*, 2026 WL 1170971, at *6; *Behdin*, 2026 WL 1031079, at *19.

Second, the directive that USCIS cannot adjudicate applications—even those USCIS accepted payment for promised premium processing within a certain timeframe—both effects Plaintiffs' rights to have a determination on their applications and has legal consequences,

including inability to work in accepted positions,[18] failure to maintain a course of study,[19] or the cessation of important research projects.[20] *See Saghafi*, 2026 WL 1127468, at *7; *Behdin*, 2026 WL 1031079, at *20; *cf. RAICES*, 793 F. Supp. 3d at 73-74 (concluding that a challenge to guidance implementing a Presidential Proclamation was a final agency action because it was not "purely informal in nature" or "merely restate[d] legal requirements derived from independent sources of law.") (marks and citation omitted). Thus, the alerts and memoranda underlying the Benefits Hold policy are final agency actions subject to this Court's review.

### 1. The Benefits Hold is arbitrary and capricious.

The Court should declare that the Benefits Hold policy violates the Administrative Procedure Act ("APA") because it is arbitrary and capricious. *See* Compl., Count III. In reviewing a claim of arbitrary agency action, the Court must examine whether the "'agency action [is] reasonable and reasonably explained.'" *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 98 (1st Cir. 2025). "An agency action is arbitrary and capricious when the agency 'relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise.'" *Bos. Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent thereof, or failure to act." 5 U.S.C. § 551(13).

The APA requires an agency to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice

---

[18] *See* Exhibit C, 9-11 (Ajao), 6-8 (Al-Zubaidi), 12-14 (Delimon), 38-40 (Pour-Ghaz), 34-35 (Khoubroyepak).
[19] *See* Exhibit C, 4-5 (Abushamma).
[20] *See* Exhibit C, 38-40 (Mirbigheri).

made.'" *Motor Veh. Manufact. Assoc. of the U.S., Inc. v. State Farm Mutual Auto. Ins. Co., et al.*, 463 U.S. 29, 43 (1983) (citation omitted). An agency action is arbitrary and capricious if the agency, *inter alia*, "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a different view or the product of agency expertise." *Id.*

Here, USCIS did not provide a reasoned explanation for any of the policy alerts or memoranda underlying the Benefits Hold policy. Starting with the Negative Factors alert, USCIS provided no clarity as to who was covered by the alert much less the justification for the change. *See* Ex. A. The alert and memorandum that followed provide no further explanation or justification. Starting in November 2025, USCIS cited the Proclamations as the source and justification for the policy, but the policy alert, ECF No. 1-1, and memorandum, ECF No. 1-2, are untethered to the articulated basis for the Proclamations: protection of U.S. citizens from individuals who seek to enter the United States to "commit terrorist attacks, threaten our national security, espouse hateful ideology, or otherwise exploit the immigration laws for malevolent purposes." Pres. Proc. 10949, 90 Fed. Reg. at 24497; *see Doe*, 2026 WL 1170971, at *17 (asserting the policy justifications based on the Proclamations "are thin reeds on which to rest an assertion of reasoned decisionmaking"). Likewise, there is no connection between the Benefits Hold, which applies to Plaintiffs *who have already been vetted and admitted to the United States*, and the Travel Ban justifications based on concerns of national security vetting for those seeking to enter the United States and high overstay rates and low repatriation numbers. *Doe*, 2026 WL 1170971, at *18 ("There is nothing in the Policy Memoranda linking the findings from the Presidential Proclamations regarding entry of foreign nationals into the United States to a decision to suspend adjudication of benefit applications by foreign nationals already admitted into the United States.");

*Bowser*, 2026 WL 555624, at \*7. Indeed, not only have all of the Plaintiffs already been vetted, but many are highly educated, impactful members of communities who serve our hospitals and medical clinics,[21] legal and criminal justice system,[22] and research laboratories.[23]

As the Court reasoned in *Bowser*, DHS maintains the ability to revoke or rescind immigration status, bring criminal charges, and initial removal proceedings for those who have entered the United States and later pose a public safety or national security risk. *Bowser*, 2026 WL 555624, at \*8. And even if repatriation concerns were a proper justification for an entry ban, those concerns do not apply with the same force to individuals within the United States who are *seeking lawful benefits or status*, such as Plaintiffs who include recent graduates seeking to transition from study to field-related work experience in the United States[24] and highly educated doctors seeking to work in underserved rural areas.[25] *Safhafi*, 2026 WL 1127468, at \*10 (recognizing the plaintiffs had been in the U.S. for long periods of time, "maintained lawful status under various programs and authorizations; and, in many cases have contributed substantially to medical and scientific research that serves U.S. interests."); *accord Bowser*, 2026 WL 555624, at \*7. Likewise, there is no connection between two "serious, but isolated, violent crimes planned by people from one country" as being "rationally connected with a policy stopping adjudication of benefit applications by people from 39 different countries[.]" *Doe*, 2026 WL 1170971, at \*17; *id.* at \*18 ("Nor are there factual findings suggesting a reasoned basis for concern about public safety or national security risks by individuals from the 39 identified countries living in the United States today.").

---

[21] *See* Exhibit C, 4-5 (Abushamma), 6-8 (Al-Zubaidi), 28-30 (Igbinomwanhia), 36-37 (Poli De Frias), 38-40 (Pour-Ghaz).
[22] *See* Exhibit C, 9-11 (Ajao), 21-23 (Farrokhi), 34-35 (Khoubroyepak), 31-33 (Jahanpanah).
[23] *See* Exhibit C, 41-42 (Lwin), 24-25 (Ghovanloo).
[24] *See* Exhibit C, 34-35 (Khoubroyepak), 31-33 (Jahanpanah).
[25] *See* Exhibit C, 28-30 (Igbinomwanhia), 38-40 (Pour-Ghaz).

Furthermore, USCIS's policy simply takes the list of 39 countries and restricts domestic benefits requests without distinguishing among the various reasons and exceptions underlying the stated entry restrictions. Defendants' asserted justification for a blanket Benefits Hold does not consider that the Travel Ban contained (albeit limited) exceptions, including an exception for dual nationals who hold a passport with a country not subject to the Travel Ban. Seven Plaintiffs have passports for countries not included on the banned list[26]; three Plaintiffs have either never lived in the banned country or have not lived there for the majority of their lives.[27] No similar exceptions apply to the Benefits Hold policy.

Not only is the Benefits Hold unrelated to the Travel Ban, but the policy is untethered to the articulated need for increased vetting procedures as the Hold and ability to consider nationality as a factor are indefinite. The alerts and memorandum also do not explain what "operational guidance" will be provided to adjudicators, or when USCIS might return to issuing final decisions for the many categories of pending applications subject to the broad hold. And the "extraordinary circumstances" carveout for individual requests to lift the Hold offers no explanation as to what would qualify as "extraordinary" or how that exception operates in practice. ECF 1-3 at 3.

Furthermore, the narrow concerns noted by the government in the Benefits Hold alerts and memoranda are insufficient to support the resulting, sweeping policy or to explain why the policy should be applied to individuals who have already been inspected and admitted to and seek to live, work, or study within the United States without incident. USCIS did not provide a reasoned explanation or any explanation of how it weighed competing interests in establishing these policies or considered the burdens imposed by the policy. *Saghafi*, 2026 WL 1127468, at *9. As in many

---

[26] *See* Exhibit C, 1-3 (Abdelrahim), 6-8 (Al-Zubaidi), 18-20 (Esmaeili), 24-25 (Ghovanloo), 31-33 (Jahanpanah), 36-37 (Poli De Frais), 38-40 (Pour-Ghaz).
[27] *See* Exhibit C, 1-3 (Abdelrahim), 18-20 (Esmaeili), 31-33 (Jahanpanah).

of the cases courts across the country have considered, Plaintiffs have "made career changes, business investments, and other long-term personal and professional decisions in reliance on the adjudication of their" benefits applications and petitions. *Saghafi*, 2026 WL 1127468, at *9.

Finally, Defendants improperly adopted the Benefits Hold, including the Negative Factors policy, without considering reliance interests. "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). As this Court has concluded, the policy memoranda and announcements are "entirely conclusory" and provide "no indication that the agency actually considered the consequences of indefinitely delaying final adjudication of pending applications." *Doe*, 2026 WL 1170971, at *18 (citing *Varniab v. Edlow*, 2026 WL 485490, at *19 (N.D. Cal. Feb. 20, 2026)); *accord Bowser*, 2026 WL 555624, at *8; *Behdin*, 2026 WL 1031079, at *21. For these reasons, the Court should, as other courts have, conclude that the Benefits Hold, including the Negative Factors policy, is arbitrary and capricious, and thus Plaintiffs have demonstrated a likelihood of success on the merits.

### 2. The challenged policies are contrary to law.

The Court should also, or alternatively, hold USCIS's policies as unlawful and set aside the memoranda and guidance as contrary to law. *See* Compl., Count IV. For purposes of review under Section 706(2), an agency acts contrary to law if it does not comply with its own regulations. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) (the term "law" under Section 706 of the APA "includes, of course, agency regulations that have the force of law").

This Court recently concluded that the Benefits Hold and the Negative Factor policy were both contrary to law. *Doe*, 2026 WL 1170971, at *14-16. The Plaintiffs in *Doe* had (and some still have) various applications on hold, and the Court walked through each one, finding a statutory or

regulatory duty to complete the adjudication. *Id.* at \*14-15. Relevant here, for Plaintiffs with adjustment of status, change of status. and work authorization statuses pending, USCIS has a duty to notify the applicant of a final decision, "making clear that a 'decision' must be issued." *Id.* at \*14. Similarly, seven Plaintiffs paid a hefty fee for expedited, "premium" processing of their applications for employment authorization.[28] The premium processing regulations clearly state that "USCIS will issue an approval notice, denial notice, a notice of intent to deny, or a request for evidence *within the premium processing time frame*," 8 C.F.R. 106.4(l) (emphasis added), which is 30 business days for employment authorization applications, 8 C.F.R. § 106.4(e)(21). By accepting Plaintiffs' funds for premium processing, USCIS has a duty to issue a determination in those cases, on the expedited timeline, as well. Because USCIS's Benefits Hold precludes that required determination, it is not in accordance with law. *Doe*, 2026 WL 1170971, at \*16.

The Court should also follow the *Doe* decision and conclude that the Negative Factors policy is not in accordance with law. The Immigration and Nationality Act provides that "no person shall . . . be discriminated against in the issuance of an immigrant visa because of the person's . . . nationality." 8 U.S.C. § 1152(a)(1)(A). But that is exactly what the Negative Factors policy does. Ex. A; *Doe*, 2026 WL 1170971, at \*16.

### 3. The challenged policies were unlawfully promulgated without notice and comment.

The Court should also, or alternatively, preclude USCIS from applying the unlawful policies because they constitute substantive rules that were promulgated without notice and comment. *See* Compl., Count VI. "The APA generally requires that before a federal agency adopts a rule it must first publish the proposed rule in the Federal Register and provide interested parties

---

[28] *See* Exhibit C, 1-3 (Abdelrahim), 6-8 (Al-Zubaidi), 18-20 (Esmaeili), 24-25 (Ghovanloo), 28-30 (Igbinomwanhia), 41-42 (Lwin), 43-45 (Mirbagheri).

with an opportunity to submit comments and information concerning the proposal." *New Hampshire Hospital Assoc. v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018) (citing 5 U.S.C. § 553). "Failure to abide by these requirements renders a rule procedurally invalid." *Id.* The APA provides for limited exemptions for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b).

Defendants cannot contest that they did not follow notice-and-comment procedures. *See Behdin*, 2026 WL 1031079, at *22 ("Defendant concedes that notice-and-comment procedures were not followed before promulgating the Policy Memoranda."). Nor can Defendants justify that an exception applies.

First, the policy at issue here is not a "policy statement" exempt from notice-and-comment rulemaking. *Behdin*, 2026 WL 1031079, at *23. This is because the Benefits Hold policy, including the Negative Factors policy, creates a new obligation, binding adjudicators, rather than announce a position or construction of existing law. *Id.* Moreover, the Benefits Hold was not only applied prospectively, but to applications pending at the time of announcement, precluding individuals from changing their behavior in response to the policy. *Behdin*, 2026 WL 1031079, at *23.

Second, the policy here is also not an "interpretive rule" as it is not interpreting any existing law or regulation. *New Hampshire Hosp. Assoc.*, 887 F.3d at 70 ("An interpretive rule is issued by an agency merely to 'advise the public of the agency's construction of the statutes and rules which it administers.'") (citations omitted); *accord Craker v. U.S. Drug Enf't Admin.*, 44 F.4th 48, 55 (1st Cir. 2022). Instead, it is a legislative rule subject to notice-and-comment rulemaking because it "'creates rights, assigns duties, or imposes obligations, the basic tenor of which is not already outlined in the law itself.'" *New Hampshire Hosp. Assoc.*, 887 F.3d at 70 (quoting *La Casa Del Convalciente v. Sullivan*, 965 F.2d 1175, 1178 (1st Cir. 1992)). Moreover, interpretive rules "do

not have the force and effect of law," *id.*, and thus could not otherwise justify USCIS's refusal to adjudicate Plaintiffs' applications.

Finally, the Benefits Hold is not merely a procedural rule explaining existing agency practice. Notably, it is not a "housekeeping measure organizing agency activities." *Presidents' Alliance on Higher Education and Immigration v. Noem*, -- F. Supp. 3d --, 2026 WL 788185, at *20 (D. Mass. Mar. 20, 2026) (internal marks and citation omitted). It matters not that the policy is embraced in internal memoranda, as it is the substance of the rule that dictate whether it was required to go through notice-and-comment procedures. *Id.*; *see New Hampshire Hosp. Assoc.*, 887 F.3d at 72 (looking at the agency's justification for the policy). Because there is no applicable exemption to notice-and-comment rulemaking, the Benefits Hold violates the APA.

**B.  Defendants' actions violate Plaintiffs' Constitutional rights.**

In addition to violating the APA, USCIS's policies violate Plaintiffs' Fifth Amendment rights. *See* Compl., Count V. The Fifth Amendment's Due Process Clause guarantees the right of due process and equal protection. Inherent in that right is "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, governmental action is unconstitutional when it creates "arbitrary or irrational" distinctions between classes of people out of "a bare . . . desire to harm a politically unpopular group." *Id.* at 446–47 (quoting *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)) (marks omitted).

The Benefits Hold, including the Negative Factors policy, targets and discriminates against individuals within the United States who are citizens of the 39 countries solely based on nationality without lawful justification. The INA expressly prohibits categorical nationality or country-level discrimination in the issuance of immigrant visas, providing that "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of

15

the person's race, sex, nationality, place of birth, or place of residence." 8 U.S.C. § 1152(a)(1)(A). The consideration of only nationality in imposing the Benefits Hold and requirement to negatively factor one's nationality demonstrates an impermissible purpose.

Upon concluding that a Constitutional right has been violated, the Court must consider whether Defendants' actions are facially legitimate and bona fide. The Court should conclude that they are not. USCIS provided no evidence in promulgating its policies that there are specific reasons to think that people from certain countries pose more of a security risk than from any other country. Plaintiffs prove such a blanket application is overbroad and not bona fide. Each Plaintiff has been vetted by the United States prior to coming and being admitted into the United States, and many have been subsequently vetted in obtaining renewals or additional visas or changes in status. Moreover, each plaintiff is a highly educated member of their community, whether they are a doctor in an underserved area,[29] a lawyer or specialist fighting for human rights,[30] or a researcher studying non-opioid pain relief or neurology.[31] No Plaintiff has a criminal history. No Plaintiff is, as the President claimed, a "radical Islamic terrorist[]." *Fact Sheet: President Donald J. Trump Restricts the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, The White House (June 4, 2025). Yet, each Plaintiff is from a country that is majority non-white[32] that has been targeted by the current Administration without factual justification.[33] Defendants' refusal to adjudicate Plaintiffs'

---

[29] *See* Exhibit C, 28-30 (Igbinomwanhia), 38-40 (Pour-Ghaz).
[30] *See* Exhibit C, 26-27 (Alnedari), 9-11 (Ajao), 21-23 (Farrokhi), 34-35 (Khoubroyepak).
[31] *See* Exhibit C, 24-25 (Ghovanloo), 43-45 (Mirbagheri).
[32] Plaintiffs are from: Burma, Haiti, Iran, Libya, Nigeria, Sudan, Venezuela, and Yemen.
[33] *See, e.g.*, *Donald Trump's 'racist slur' provokes outrage*, BBC (Jan. 12, 2018), https://www.bbc.com/news/world-us-canada-42664173; Amna Nawaz & Jonah Anderson, *Trump's affordability speech turns into a rant against immigrants*, PBS News (Dec.10, 2025), https://www.pbs.org/newshour/show/trumps-affordability-speech-turns-into-a-rant-against-

applications and petitions purely based on nationality and discriminatory conjecture is not facially legitimate and bona fide and thus this Court should conclude that the Benefits Hold, including the Negative Factors policy, is unconstitutional.

## II.    Plaintiffs Will Suffer Irreparable Harm Absent An Injunction.

In addition to demonstrating a likelihood of success on the merits, Plaintiffs also demonstrate that they meet the second prong of the injunction analysis, as they will suffer irreparable harm absent an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "[T]he measure of irreparable harm is not a rigid one; it has been referred to as a sliding scale, working in conjunction with a moving party's likelihood of success on the merits." *Vaqueria Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464, 485 (1st Cir. 2009). "District courts have broad discretion to evaluate the irreparability of alleged harm and to make determinations regarding the propriety of injunctive relief." *Id.* at 485 (1st Cir. 2009) (quotation omitted).

Here, Plaintiffs will suffer numerous irreparable harms, including professional harm, disruption of education, financial instability, psychological and emotional impact, harm to Plaintiffs' communities, and family separation. *See Saghafi*, 2026 WL 1127468, at *10. Plaintiffs have articulated that their careers are stalled,[34] their U.S. citizen immediate family members will be harmed,[35] their communities rely on them, they all risk losing their jobs and many risk family

---

immigrants; Josh Boak, *Trump says he wants to 'permanently pause' migration to the U.S. from poorer countries*, Associated Press (Nov. 28, 2025), https://apnews.com/article/trump-national-guard-shooting-migration-17bc0655f4544cc702623574ed08eb62; Ginger Gibson, *Trump says immigrants are 'poisoning the blood of our country.' Biden Campaign likens comments to Hitler*, NBC News (Dec. 17, 2023), https://www.nbcnews.com/politics/2024-election/trump-says-immigrants-are-poisoning-blood-country-biden-campaign-liken-rcna130141.

[34] *See* Exhibit C, 4-5 (Abushamma), 6-8 (Al-Zubaidi), 9-11 (Ajao), 15-17 (Elmane), 18-20 (Esmaeili), 24-25 (Ghovanloo), 34-35 (Khoubroyepak), 43-45 (Mirbagheri), 36-37 (Poli De Frais).

[35] *See* Exhibit C, 12-14 (Delimon), 28-30 (Igbinomwanhia), and 43-45 (Mirbagheri).

separation,[36] and many are unable to renew their driver's licenses.[37] Plaintiffs' claim of "professional harms, family separation, educational disruption, financial instability, and medical and family planning concerns" thus satisfy the irreparable harm standard. *Saghafi*, 2206 WL 1127468, at *13; *see also Doe*, 2026 WL 1170971, at *19 (discussing the plaintiffs' irreparable harm as including loss of work and health insurance, financial insecurity, lost professional opportunities and job offers, having to miss family weddings or delay trips to see elderly or ill family members, being at risk of unlawful detention by ICE, and fear being forced to return to countries where they will be unsafe). Indeed, the harm here is not just lost wages, but a fundamental impact on Plaintiffs' ability to live, support their families, and remain lawfully in the United States. *Bowser*, 2026 WL 555624, at *9; *Saghafi*, 2026 WL 1127468, at *11. "These sorts of harms are not measurable and not adequately compensable by money damages." *Doe*, 2026 WL 1170971, at *19 (citing *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996)). Accordingly, the Court should find that this factor weighs in favor of Plaintiffs.

### III.    The Equities And Public Interest Weigh In Favor Of Plaintiffs.

Finally, district courts must consider "the balance of equities and the public interest"—the third and fourth *Winter* factors—in considering a motion for preliminary injunction. *Winter*, 555 U.S. at 27. In weighing the equities, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id*. at 24 (citation omitted). Weighing the public interest, on the other hand, "primarily addresses impact on non-parties rather than parties." *CTIA-The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 852 (9th Cir. 2019). Where, as here, the Government is a party to a case, the balance of the equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

---

[36] *See* Exhibit C, 12-14 (Delimon), 15-17 (Elmane).
[37] *See* Exhibit C, 6-8 (Al-Zubaidi), 38-40 (Pour-Ghaz).

Plaintiffs request a limited preliminary injunction that would only apply to these seventeen individual Plaintiffs, but its impact would cascade to support their families and communities. *See Bowser*, 2026 WL 555624, at *9. The denial of the preliminary injunction would allow several Plaintiffs' employment authorization to expire or continue to preclude those with already expired authorization to work,[38] preclude two from renewing their driver's licenses,[39] and cause hundreds or thousands of patients to miss doctor appointments and needed medical care.[40] For individuals who have already been vetted, employed, and living in the United States, and who the government has not alleged pose any security concerns, there is no public or government interest in the Benefits Hold. *See Varniab*, 2026 WL 485490, at *14.

## IV.    Plaintiffs Should Not Be Required To Pay An Injunction Bond.

In appropriate cases, the court may require the party seeking preliminary injunctive relief to "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). There is no requirement that the district court set a bond under Federal Rule Civil Provision 65(c). *See Pineda v. Skinner Servs., Inc.*, 22 F.4th 47, 57 (1st Cir. 2021) ("The bond requirement is not jurisdictional."). Indeed, "there is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond," *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991) (collecting cases).

The Court should not require a bond in this case. "The purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the

---

[38] *See* Exhibit C, 6-8 (Al-Zubaidi), 9-11 (Ajao), 28-30 (Igbinomwanhia), 24-25 (Ghovanloo), 34-35 (Khourbroyepak).
[39] *See* Exhibit C, 6-8 (Al-Zubaidi), 38-40 (Pour-Ghaz).
[40] *See* Exhibit C, 28-30 (Igbinomwanhia), 38-40 (Pour-Ghaz).

19

injunction should it later be determined that it was wrongfully enjoined." *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 11 (1st Cir. 2018). Here, Defendants cannot point to any monetary losses that are likely to be associated with the requested relief. The challenged policy does not excuse Defendants from processing and adjudicating Plaintiffs' petitions in perpetuity, and therefore an injunction does not commit the agency to any action that it will not inevitably be required to perform. Conversely, the Plaintiffs are facing substantial amounts of lost wages as a result of the challenges policies. *See, e.g., Pineda*, 22 F.4th at 57 (finding plaintiff wages a relevant Rule 65(c) consideration). Therefore, the Court should exercise its discretion to excuse Plaintiffs from paying security under Rule 65(c).

## CONCLUSION

For the foregoing reasons, Plaintiffs request this Court issue a preliminary injunction precluding Defendants from applying the Benefits Hold, including the Negative Factor policy, to their applications, and require USCIS to adjudicate their applications within a fixed, short period of time.

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on this day, she caused the foregoing document and all Exhibits to be served on all counsel of record via the Court's CM/ECF system.

Dated: May 22, 2026                           Respectfully Submitted,

*/s/ Kerry E. Doyle*                          Khanbabai Immigration Law
KERRY E. DOYLE                                115 Main Street, Ste 1B
Green and Spiegel LLC                         Easton, MA 02356
1524 Delancey St., 4th Floor                  (508) 297-2065
Philadelphia, PA 19102                        Mahsa@mk-immigration.com
(617) 216-1248
kdoyle@gands-us.com                           JESSICA DAWGERT
                                              Ariela Lake Law and Consulting
*/s/ Mahsa Khanbabai*                         3355 Hudson St., #7098
MAHSA KHANBABAI                               Denver, CO 80207

Tel: (303) 531-6634
Email: jess@allc.law

SARAH S. WILSON
Colombo & Hurd, PL
301 E. Pine St. #450
Orlando, FL 32801
(407) 478-1111
swilson@colombohurd.com